*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0038p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 04-5283

MICHAEL WAYNE MORGAN,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 03-00025—David L. Bunning, District Judge.

Argued: December 6, 2005

Decided and Filed: January 26, 2006

Before: MOORE, ROGERS, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** James L. Cobb, Jr., Cincinnati, Ohio, for Appellant. Robert K. McBride, ASSISTANT UNITED STATES ATTORNEY, Covington, Kentucky, for Appellee. **ON BRIEF:** James L. Cobb, Jr., Cincinnati, Ohio, for Appellant. Robert K. McBride, ASSISTANT UNITED STATES ATTORNEY, Covington, Kentucky, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Defendant Michael Wayne Morgan ("Defendant" or "Morgan") entered a conditional guilty plea to a violation of 18 U.S.C. § 2252A(a)(5)(B), which prohibits possessing images depicting minors engaged in sexually explicit conduct. Morgan appeals the district court's denial of his motion to suppress evidence of child pornography that resulted from a search of a computer in his home because he argues that his wife did not have the requisite authority to consent to the search. Also before us is whether Morgan's sentence violated the Sixth Amendment in light of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). For the reasons set forth below, we **AFFIRM** the denial of the motion to suppress, but **VACATE** Morgan's sentence and **REMAND** for resentencing.

1

# I. BACKGROUND

On November 28, 2001, Cassie Morgan, Defendant's wife, contacted the Boone County Sheriff's Department ("BCSD") and spoke to Captain John Prindle regarding her suspicion that her husband, Defendant Michael Morgan, was viewing child pornography through the internet on a computer in their home. She told Captain Prindle that she had installed "SpectroSpy," a software program known as "spyware" that captures whatever appears on the screen of the computer every ten seconds, without her husband's knowledge. The next day, several BCSD officers responded to a domestic violence call from the Morgan home that resulted from Cassie Morgan confronting Defendant with her knowledge of the child pornography. Cassie Morgan told Detective Victor Lavender, one of the officers who responded to the call, that she had discovered that her husband had been viewing child pornography and that she had captured some of the images through the spyware she installed on the computer. Detective Lavender reviewed a consent to search form with Cassie Morgan; she consented and signed the form.

The computer was located in the basement, a common area of the Morgan residence to which Cassie Morgan had access. Cassie Morgan indicated to Detective Lavender that both she and her husband had access to the computer, and she told Captain Prindle that she occasionally used the computer,[1] and that they did not have individual usernames or passwords. Although Cassie Morgan had her own computer for her primary use, she never told the officers about this computer.

Captain Prindle conducted an examination of the computer's hard drive, which revealed large numbers of files containing images of child pornography.[2] Defendant downloaded these images from an internet newsgroup and saved them on the computer. Once the files were downloaded, they were not password-protected or encrypted. Although there was no password protection, the Defendant had installed an "Internet Eraser" program by which he intended to delete the images from the computer. The eraser program eliminated much of the evidence of Defendant's viewing of child pornography, but for some unknown reason, the program did not delete the approximately 148 images that Captain Prindle recovered from Defendant's computer.

On April 9, 2003, Defendant was charged with receiving child pornography that had been shipped in interstate commerce in violation of 18 U.S.C. § 2252A(a)(2). The Defendant initially pleaded not guilty. He then moved to suppress the evidence obtained without a search warrant, and his motion was denied. On November 10, 2003, the Defendant entered an oral conditional plea of guilty to possessing images depicting minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252A(a)(5)(B), a lesser-included offense of the charged violation. The parties then orally agreed that the Defendant could appeal the district court's denial of his motion to suppress. The district judge informed the Defendant that he should file a written notice of the specific issues he wished to preserve on appeal. On November 17, 2003, the Defendant filed a notice stating that he was preserving for appeal "that his right to privacy while using his computer . . . was violated." Joint Appendix ("J.A.") at 110 (Specification as to Intended Appeal). Defendant filed no subsequent notice regarding other issues for appeal.

On February 27, 2004, the Defendant was sentenced to a twenty-eight-month term of imprisonment. On March 5, 2004, Defendant filed this appeal, and on March 26, 2004, Defendant

---

[1]Although Ms. Morgan testified in state court that she told Captain Prindle that she had access to but did not use the computer, the district court found, based on Captain Prindle's testimony, that she told him that she used the computer, and as this finding is not clearly erroneous, we will not disturb it on review.

[2]Although Captain Prindle discovered images saved by the Defendant to the hard drive and images captured by the Spyware software, only the images in the former category are at issue in this case.

moved for a stay of execution of his sentence pending this appeal. The district court denied this motion on April 1, 2004.

In this court, the Government filed a motion to stay further proceedings pending issuance of the mandate in *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005), as the outcome there would bear on Defendant's sentencing, and for permission to file a supplemental brief. This motion was granted, and on August 22, 2005, the Government filed a letter brief addressing Defendant's sentencing and the related Sixth Amendment issues. Defendant filed no response.

## II. MOTION TO SUPPRESS

### A. Standard of Review

In reviewing a denial of a motion to suppress, we review the district court's legal conclusions de novo and its findings of fact for clear error. *United States v. Harris*, 192 F.3d 580, 584 (6th Cir. 1999).

### B. Third-Party Consent and Apparent Authority

Where valid consent is given, a search is permissible under the Fourth Amendment even without a warrant or probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Such consent must be "freely and voluntarily given." *Id.* at 222 (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). Valid consent may be given not only by the defendant but also by "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974).

We have held that even where third-party consent comes from an individual without actual authority over the property searched, there is no Fourth Amendment violation if the police conducted the search in good faith reliance on the third-party's *apparent authority* to authorize the search through her consent. *United States v. Hunyady*, 409 F.3d 297, 303 (6th Cir. 2005) (citing *United States v. Gillis*, 358 F.3d 386, 390 (6th Cir. 2004)). "Apparent authority is judged by an objective standard. A search consented to by a third party without actual authority over the premises is nonetheless valid if the officers reasonably could conclude from the facts available that the third party had authority to consent to the search." *Id.* (quoting *Gillis*, 358 F.3d at 390-91).

In this case, the computer was located in a common area to which Cassie Morgan had complete access, and she indicated to the officers who came to her home that she had access to and used the computer and that she and the Defendant did not have individual usernames or passwords. Cassie Morgan never informed the officers that there was another computer in the home. She also told Detective Lavender that she had installed the spyware software on the computer, which further supported the conclusion that she had access to the computer. Based on these facts, "'the officers reasonably could conclude from the facts available that [Cassie Morgan] had authority to consent to the search,'" *see id.*, and this apparent authority remedies the constitutional error that would otherwise result from a warrantless search.

There is no evidence in the record regarding when during his search of the computer Captain Prindle found the Internet Eraser program. Even assuming that he found the program before he found the pornographic files, this would not undermine our conclusion that apparent authority permits this warrantless search under the Fourth Amendment. When we inquire into whether there was apparent authority to validate third-party consent to a warrantless search, we look at the facts available to the police at the time the search began. *See Gillis*, 358 F.3d at 391 (explaining that the officers' knowledge "*at the time of the search*" is the relevant inquiry) (emphasis added); *United States v. Hawkins*, No. 03-5794, 2005 U.S. App. LEXIS 642, at *7 (6th Cir. Jan. 12, 2005) (stating apparent authority test as "whether the officer reasonably could have concluded, from the facts

available *at the time*, that the third party had authority to consent" (emphasis added)).  If apparent authority existed at that time, later-discovered facts that might undermine the initial reasonable conclusion of third-party apparent authority are generally immaterial.  Moreover, in this case, Captain Prindle's discovery of the eraser program would not necessarily call into question the conclusion that Cassie Morgan had the requisite authority to consent to the computer's search because at that time Captain Prindle did not know who installed the eraser program or why it was installed.  Therefore, the discovery of the eraser program does not vitiate Cassie Morgan's apparent authority.

In arriving at this conclusion, we express no view as to whether Cassie Morgan had actual authority to consent to the search.  Because apparent authority supports the constitutionality of the search, we need not consider the question of actual authority.

### III.  SENTENCING

The Government, in its letter brief filed on appeal addressing sentencing issues, acknowledged that the Defendant's sentencing under the then-mandatory U.S. Sentencing Guidelines ("Guidelines") relying on facts beyond those admitted by the Defendant constituted a Sixth Amendment violation.  Although the Defendant filed no response to the Government's letter brief and made no mention of a Sixth Amendment violation in his brief on appeal filed after *Booker*, the parties argued the issue at oral argument, and the Government has conceded that the Defendant was sentenced in violation of *Booker*.

### A.  Standard of Review

Because the Defendant's sentence was pending on direct appeal when *Booker* was decided, and Defendant did not raise a Sixth Amendment challenge in the district court, we review his sentence for plain error.[3]  *United States v. Oliver*, 397 F.3d 369, 377-78 (6th Cir. 2005).  Under the plain error test, "'before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights.  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"  *Id.* at 378 (quoting *Johnson v. United States*, 520 U.S. 461, 466 (1997)) (internal quotations omitted).

### B.  Sixth Amendment Violations under *Booker*

*Booker* held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" or else the Sixth Amendment is violated.  125 S. Ct. at 756.  The base offense level for a violation of 18 U.S.C. § 2252A(a)(5)(B), the offense to which Defendant pleaded guilty, is fifteen.  U.S. Sentencing Guidelines Manual § 2G2.4(a).  Defendant was entitled to a three-level decrease for accepting responsibility.  *Id.* § 3E1.1.  Defendant's sentence was enhanced a total of six levels based on three separate factors — (1) the Defendant's use of a computer to commit the crime, (2) possession of more than ten items of child pornography, and (3) possession of pornographic images of children under age twelve — each of which carried a two-level increase.  *Id.* § 2G2.4.  Because Defendant did not admit to any of these facts, enhancing his sentence on these grounds under a mandatory

---

[3]The Government erroneously asserts that the Defendant waived his *Booker* claim by failing to preserve a Sixth Amendment issue as part of his conditional guilty plea.  There was no plea agreement to waive the right to appeal the sentence.  We held in *Oliver* that we review *Booker* claims for plain error where the Defendant did not raise a Sixth Amendment objection below.  *Oliver*, 397 F.3d at 377-78; *see also United States v. Smith*, 429 F.3d 620, 626-27 (6th Cir. 2005).

sentencing scheme violates the Sixth Amendment.[4] *See Booker*, 125 S. Ct. at 756. We have previously held that such an enhancement of a sentence based on judge-found facts constitutes plain error in violation of *Booker*. *See Oliver*, 397 F.3d at 377-81.

In addition, the district court applied the Guidelines as mandatory in sentencing the Defendant, contrary to *Booker*'s holding that the Guidelines must be treated as advisory. *See* 125 S. Ct. at 756-57. Because there is no "clear and specific evidence" that the Defendant would have faced the same sentence were the Guidelines treated as advisory, this also constitutes plain error. *See United States v. Barnett*, 398 F.3d 516, 529 (6th Cir.), *cert. dismissed*, 126 S. Ct. 33 (2005).

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the denial of the motion to suppress, but **VACATE** the Defendant's sentence and **REMAND** for resentencing consistent with *Booker*.

---

[4]Without these enhancements, Defendant was subject to a level-twelve sentence, and given Defendant's criminal history rating of zero, this warranted a sentence of ten to sixteen months of imprisonment under the 2001 Guidelines, the version used to sentence Defendant. Therefore, Defendant's twenty-eight month sentence exceeded the maximum sentence authorized by the facts established by his guilty plea.