**UNITED STATES of America,**
**Appellee,**

v.

**Dmitry PROSHIN, Defendant–**
**Appellant.**

**Docket No. 04–5308–CR.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 5, 2005.

Decided Feb. 16, 2006.

Louis R. Aidala, Law Office of Louis R. Aidala, New York, New York, for Defendant–Appellant.

Christopher P. Conniff, Assistant United States Attorney, New York, New York (Michael J. Garcia, United States Attorney, Jonathan S. Kolodner, Robin L. Baker, Assistant United States Attorneys, Southern District of New York, New York, New York, of counsel), for Appellee.

Before: KEARSE, CARDAMONE, and CABRANES, Circuit Judges.

PER CURIAM.

Dmitry Proshin (defendant or appellant) appeals from a judgment of conviction en-

tered in the United States District Court for the Southern District of New York (Wood, J.) on September 17, 2004, following a jury trial. The jury found defendant guilty of conspiring to produce and of producing false identification documents in violation of 18 U.S.C. §§ 2 and 1028. A sentence of 24 months imprisonment was imposed, which defendant has now served, followed by three years supervised release.

Defendant raises several arguments on appeal but we concern ourselves in this *per curiam* opinion with only one: Whether the district court erred by applying a six-level enhancement when calculating defendant's sentence. In a separate summary order filed today we address and dispose of the remainder of defendant's arguments made in his appeal.

The one issue we address arises from the trial court's finding of fact at sentencing that Proshin's offenses involved between 25 and 99 false identification documents. Based on that finding the district judge enhanced defendant's sentence by six levels under United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 2L2.1(b)(2). Proshin argues that there was insufficient evidence for the district court to make a finding that his offense involved between 25 and 99 documents. However, there was ample evidence to support the trial court's finding which cannot be said to be clearly erroneous. Hence, we affirm the sentence enhancement imposed on defendant.

## BACKGROUND

### A. *Facts at Trial*

For a two-year period from at least 2001 to 2003, defendant and various associates assisted illegal immigrants with fraudulently obtaining North Carolina driver's licenses. Until July 2002 Proshin engaged in this activity from an office he maintained at 37 West 32nd Street in New York City. Later, after July 2002, he worked with a partner, Sergiy Zakalichnyy, who operated out of an office located at 1807 Kings Highway in Brooklyn, New York.

As part of the government's case, two illegal aliens, Svetlana Tropina and Shaklo Ibragimova, testified that they used Proshin's services in 2001 to obtain North Carolina learner's permits. An advertisement placed in a Russian language newspaper led Ms. Ibragimova to Proshin, while a mutual acquaintance led Ms. Tropina to him. Both Tropina and Ibragimova explained to the jury how Proshin had for a fee of up to $1,500 assisted them in obtaining the out-of-state learner's permits.

Proshin gave the women North Carolina driver's manuals to study so they would be prepared to take the licensure test. He then put them in contact with Andrey Shpigel, his partner in North Carolina, with whom Proshin split the fee the women paid him. The aliens, who lived in New York, traveled to Shpigel's car dealership in North Carolina where he filled out the necessary paperwork. Because North Carolina has a residency requirement for obtaining permits, Shpigel had the women enter his dealership address as their home address. With Proshin and Shpigel's assistance, both Tropina and Ibragimova were able illegally to obtain North Carolina learner's permits.

Gidon Zevadia, a government informant, also testified at trial. During taped telephone conversations on January 14, 2003 Zakalichnyy told Zevadia to get in touch with his "partner," Proshin. Zevadia then recorded telephone conversations with Proshin discussing how Proshin would assist him in obtaining a North Carolina license. On February 11, 2003 Zevadia met with Proshin at a pre-arranged location in Brooklyn so that Proshin could

drive him to North Carolina. When Zevadia refused to pay Proshin's fee in advance, Proshin refused to go. Prior to that refusal, Proshin had called Zakalichnyy to discuss Zevadia's failure to pay the fee.

On August 14, 2003 the FBI searched the office of Zakalichnyy, Proshin's partner, at 1807 Kings Highway and discovered 27 federal tax identification cards, two North Carolina driver's manuals, and a computer harddisk containing a file with Proshin's name and his Manhattan office address. The government presented evidence that North Carolina required federal tax identification cards from license applicants. The prosecution also presented records of telephone calls from Proshin to his partners Zakalichnyy and Shpigel. From January 2001 to April 2003 Proshin called Zakalichnyy's cellular telephone 351 times and the 1807 Kings Highway office 148 times. Proshin also called Shpigel over 180 times from January 2002 to April 2003.

### B. *Conviction and Sentencing*

The jury found Proshin guilty on both counts of the indictment: (1) conspiracy to produce, without lawful authority, false identification documents in violation of 18 U.S.C. § 1028, and (2) production, without lawful authority, of false identification documents in violation of 18 U.S.C. §§ 2 and 1028. At sentencing the district court found that Proshin's offenses involved between 25 and 99 fraudulent identification documents and thereby imposed the six-level enhancement to his sentence, which is the issue we discuss in this writing.

### DISCUSSION

### A. *Standard of Review*

■ We review the district court's factual finding that Proshin's offenses in-

volved between 25 and 99 documents for clear error. *See United States v. Crosby*, 397 F.3d 103, 114 (2d Cir.2005). A finding of fact is clearly erroneous only if, after viewing all the evidence, we are left with a "definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). We are "mindful that where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Shepardson*, 196 F.3d 306, 309 (2d Cir.1999).

### B. *25 to 99 Documents Linked to Defendant*

Proshin contends the government failed to prove that his offenses involved between 25 and 99 fraudulent identification documents by a preponderance of the evidence. He intimates that the evidence established at most three fraudulent documents—the permits obtained for Tropina and Ibragimova, and the attempted procurement for Zevadia. He also attacks the evidence linking him to 1807 Kings Highway—and the 27 federal tax identification cards found there—as speculative.

■ The government must prove and the district court must find a fact relevant to sentencing by a preponderance of the evidence. *United States v. Gaskin*, 364 F.3d 438, 464 (2d Cir.2004). When sentencing, a sentencing court is entitled to rely on any facts available to it. *Id.* The Guidelines recommend that a sentence be enhanced by six levels if the trial court finds the trafficking in fraudulent identification documents offense involved 25 to 99 documents. U.S.S.G. § 2L2.1(b)(2).

■ To resolve the issue before us we focus on the 27 federal tax identification cards discovered at 1807 Kings Highway. Each of these documents counts as a separate document for sentence enhancement

purposes under U.S.S.G. § 2L2.1. *See United States v. Badmus,* 325 F.3d 133, 139–40 (2d Cir.2003) (holding that defendant's 20 "visa lottery" applications each counted as a separate document for sentencing purposes even though documents were to be used by only three or four persons); *see also United States v. Castellanos,* 165 F.3d 1129, 1132–33 (7th Cir. 1999). Proshin therefore cannot rely on U.S.S.G. § 2L2.1 cmt. n. 2, *see id.* ("Where it is established that multiple documents are part of a set of documents intended for use by a single person, treat the set as one document."), because the 27 tax identification cards do not constitute a "set … intended for use by a single person."

The dispositive question is whether a preponderance of the evidence links Proshin to 1807 Kings Highway and renders the 27 federal tax cards attributable to him. There is no evidence in the record that appellant was ever physically present at the Kings Highway address. But more than sufficient evidence connects him as a partner of the illegal operation at 1807 Kings Highway and to the 27 documents located there. Foremost are the January 14, 2004 telephone conversations between Zevadia and Zakalichnyy during which Zakalichnyy repeatedly referred to Proshin as his partner. Later that day when Zevadia telephoned Proshin telling him that Zakalichnyy, Proshin's partner, referred Zevadia to him, Proshin welcomed the call and proceeded to make arrangements with Zevadia for procuring a North Carolina license. Further, prior to cancelling his participation in the trip to North Carolina, Proshin called Zakalichnyy to discuss Zevadia's failure to pre-pay the fee, additionally demonstrating the partnership relationship between Proshin and Zakalichnyy.

Beyond the preceding facts, other evidence supports Proshin's role as a partner of the fraudulent document activities at 1807 Kings Highway: (1) the close to daily telephone calls from Proshin to Zakalichnyy, the 1807 Kings Highway office and Shpigel, (2) the computer harddisk discovered at the office containing Proshin's name and his Manhattan office address, (3) the North Carolina Department of Motor Vehicle manuals discovered at the Brooklyn office and Proshin's practice of giving the manuals to his clients in order to facilitate obtaining licenses, and (4) evidence that Proshin's scheme had been in operation for nearly two years from April 2001 to January 2003. Although the above facts are circumstantial, a sentencing court may base a finding of fact relevant to sentencing on circumstantial evidence. *Gaskin,* 364 F.3d at 464 ("[A] sentencing court, like a jury, may base its factfinding on circumstantial evidence and on reasonable inferences drawn therefrom.").

Moreover, this case is unlike the circumstances in *United States v. Shonubi,* 998 F.2d 84, 89–90 (2d Cir.1993), in which we held that the amount of heroin determined for sentencing purposes could not be calculated by multiplying the amount from the last trip on which the defendant imported heroin and the number of total trips, without having any information regarding the amount of heroin involved in those prior trips. In the instant case, the district court took into account the three documents Proshin obtained or attempted to obtain and the duration of his criminal enterprise. But the district judge did not base her finding that Proshin's offenses involved more than 25 documents solely on an extrapolation from the three documents relating to Tropina, Ibragimova, and Zevadia and the scheme's duration. Here, the government presented specific proof that Proshin's offenses involved more than 25 documents, to wit, the 27 tax documents seized from 1807 Kings Highway. Those 27 documents, along with other specific evidence linking Proshin to Zakalichnyy

and the criminal enterprise operating at that location, provided an ample basis for the court's finding that Proshin's offenses involved more than 25 documents. And, although Proshin himself may not have been present at the location where the documents that enhanced his sentence were found by police, he was proved to be a partner of the person at the site. Hence, he was properly subject to the sentence enhancement.

## CONCLUSION

Accordingly, defendant's conviction and sentence are affirmed.