14-4295-cr
*United States v. Joseph Vincent Jenkins*

# In the
# United States Court of Appeals
## For the Second Circuit

————

August Term, 2015

No. 14-4295-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

JOSEPH VINCENT JENKINS
*Defendant-Appellant.*

————

Appeal from the United States District Court
for the Northern District of New York.
No. 11-cr-602 — Glenn T. Suddaby, *Chief Judge*.

————

Argued: May 18, 2016
Decided: April 17, 2017

————

Before: KEARSE, JACOBS, and PARKER, *Circuit Judges*.

————

Defendant-appellant Joseph Vincent Jenkins appeals from a judgment of conviction in the United States District Court for the Northern District of New York (Suddaby, *Chief Judge*). Jenkins was convicted of possession and transportation of child pornography

after he was found with a collection of child pornography on his laptop and thumb drive as he crossed the U.S.-Canada border on his way to a family vacation. The district court sentenced him principally to 225 months in prison followed by 25 years of supervised release. We conclude that this sentence was substantively unreasonable. Accordingly, we vacate this sentence and remand for resentencing.[1]

Judge KEARSE concurs in part and dissents in part in a separate opinion.

————

DANIEL DEMARIA, Merchant Law Group LLP, New York, NY, *for Defendant-Appellant*.

RAJIT S. DOSANJH (Tamara Thomson, *on the brief*), Assistant United States Attorneys, *for* Richard S. Hartunian, United States Attorney, Northern District of New York, Syracuse, NY, *for Appellee*.

————

BARRINGTON D. PARKER, *Circuit Judge*:

A jury found Joseph Vincent Jenkins guilty of one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and one count of transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1), based on the government's proof at trial that Jenkins owned a collection of child pornography and brought it across the U.S.-Canada border on the way to a family vacation for his personal viewing.

The United States District Court for the Northern District of New York (Glenn T. Suddaby, *Chief Judge*) imposed concurrent sentences of 120 months for the possession count, the statutory

---

[1] A summary order issued concurrently with this opinion affirms the judgment of conviction with respect to the remaining issues raised by Jenkins on his appeal.

maximum, and 225 months for the transportation count, just below the statutory maximum of 240 months. The court also imposed a term of 25 years of supervised release. Jenkins challenges his conviction and the procedural and substantive reasonableness of his sentence.

The government's evidence established that Jenkins, a first time felony offender, maintained a collection of child pornography on a personal computer and thumb drive for personal use. He did not produce or distribute child pornography and did not contact or attempt to contact a minor. He "transported" his images in the technical sense that he brought them on a family vacation that involved his crossing the Canadian border and he was apprehended at the Canadian side. For the reasons that follow, we hold that a sentence of 225 months and 25 years of supervised release is substantively unreasonable. Accordingly, we vacate the sentence and remand for resentencing.

# BACKGROUND

On May 24, 2009, Jenkins attempted to enter Canada from the United States at the border crossing in Landsdowne, Ontario. Jenkins, who was 39 years old at the time, was traveling alone from his home in Geneva, New York to spend a week with his parents at their summer home in Quebec. Canadian border agents searched his vehicle and discovered a Toshiba laptop, a Compaq laptop, and three USB thumb drives.

Jenkins's "demeanor" prompted the agents to search the devices. After finding child pornography on the Toshiba laptop and on one of the thumb drives, the agents seized all the devices and arrested and subsequently charged him with child pornography offenses under the Canadian Criminal Code.

After being released on bail, Jenkins did not appear on his scheduled trial date and the Canadian court issued a bench warrant

for his arrest. Canadian agents subsequently contacted the U.S. Department of Homeland Security ("DHS"), inquiring whether DHS was interested in information about the case. DHS then commenced an investigation, obtained Jenkins's electronic devices from Canadian authorities, and proceeded to examine them. This examination confirmed that the devices contained images and videos depicting child pornography. Jenkins was subsequently arrested by U.S. law enforcement officials and charged with possessing and transporting child pornography. The case proceeded to trial, where the government introduced the devices and the images into evidence, and presented both Canadian and DHS officials as witnesses.

Jenkins testified at trial, making a number of contentions that turned out to be false. First, he contended that contractors working for his electrical contracting business had frequent access to all areas on his laptops and could take his laptops home. Jenkins denied that the thumb drives were in his truck and asserted that he had never seen them before. Finally, he claimed that he was absent from the Canadian trial because his lawyer there had suggested to him that "you could just not return to Canada if you want to just not deal with the charge." App. 631. The jury ultimately credited the government's version of events and returned a guilty verdict on both counts on February 6, 2014.

The Probation Office issued its Presentence Investigation Report ("PSR") in April 2014. Applying United States Sentencing Guideline § 2G2.2 for child pornography offenses, the PSR calculated Jenkins' base offense level as 22. § 2G2.2(a)(2). The PSR recommended four enhancements: (i) two levels for possessing material involving a prepubescent minor, *id.* § 2G2.2(b)(2); (ii) four levels for material portraying sadistic or masochistic conduct or other forms of violence, § 2G2.2(b)(4); (iii) two levels because the offenses involved the use of a computer, *id.* § 2G2.2(b)(6); and (iv) five levels because the offenses involved 600 or more images, *id.*

4

§ 2G2.2(b)(7)(D). These enhancements raised Jenkins offense level from 22 to 35. Jenkins received no offense level reductions for acceptance of responsibility. Because Jenkins only had a prior misdemeanor offense, he was found to have a Criminal History Category of I. In addition, at the sentencing hearing, the government sought a two-level enhancement for obstruction of justice contending that Jenkins had offered false exculpatory testimony at trial. *See id.* § 3C1.1. The district court agreed and applied the enhancement. It also adopted the factual findings and Guidelines recommendations from the PSR. The result was a total offense level of 37, yielding a Guidelines range of 210 to 262 months.

The sentencing hearing was a stormy one at which Jenkins, an intemperate, out-of-control pro se litigant, repeatedly clashed with the court. For example, the following colloquy transpired after Jenkins conceded that it was too late for him to retain new counsel, and the court informed Jenkins that the sentencing hearing would nevertheless proceed:

THE DEFENDANT:

Well, I mean, I've pretty much demanded that -- I don't feel you have any right to sentence me after all these antics and there's a lot of screwing around here and I don't agree with it and I've repeatedly asked Ms. Peebles [Jenkins's attorney] here to file a petition to have you removed and I think that there's grounds for it. I've been going over submissions the last few weeks and court transcripts. I mean, that's what I want. I'd rather -- I mean, you've set a record that -- I mean, she hasn't done what I've asked her to do. We've been going around for a few months arguing.

...

THE COURT:

No attorney's done what you've asked them to do, according to you, despite being represented by a number of different counselors. You started with Mr. Parry. You referred to him as an idiot and not knowing what he was doing. The Court sent numerous attorneys to meet with you in the jail so you could retain someone. You made derogatory comments about the people that were very well-regarded in this community, legal community, as far as representing federal defendants. Then we provided you with a list of CJA attorneys that are admitted to the Northern District of New York to give you an opportunity to retain somebody. You did retain an Aaron Goldsmith out of New York who represented you at trial and then he requested to be relieved because of his irreconcilable differences with you and not being able to get along with you. And then, you know, the federal public defender's office was assigned by Judge Peebles and has represented you, in this Court's view, in a very capable and competent manner and here we are again.

So, sir, you can demand all you want. You can criticize. You can blame everybody else. You can say it's the attorney's fault. But we're at a point, sir, where we're going to proceed with sentencing. You have counsel. You've been represented well and you've had an opportunity to submit everything that you've wanted to to this Court and I've reviewed everything that you submitted, despite its derogatory tone and comments, disrespectful comments to this Court and everybody else that you've had to deal with, sir.

So, you'll be given a full opportunity to say anything you want. If you're not going to retain somebody, certainly this Court is not going to appoint another attorney to represent you at this point.

...

So you can proceed by representing yourself today. That's up to you, sir, but we're going to proceed with sentencing.

App. 835-37.

The district court imposed a sentence of 225 months for the transportation charge and a concurrent sentence of 120 months for the possession charge, the statutory maximum. *See* 18 U.S.C. §§ 2252A(b)(1) and (2). Judge Suddaby also imposed on Jenkins 25 years of extensive conditions of supervised release. Some of them were obviously appropriate but others were unexplained by the sentencing judge and were imposed without regard to the personal characteristics of the defendant and the circumstances of his offense. In view of Jenkins's age, this sentence effectively meant that Jenkins would be incarcerated and subject to intense government scrutiny for the remainder of his life.[2]

Jenkins was required to register as a sex offender in any state in which he resided or worked. He was required not to "use or possess any computer or any other device with online capabilities, at any location, except at your place of employment, unless you participate in the Computer Restriction and Monitoring Program."

---

[2] As a 44-year-old impecunious white male with a high school education, Jenkins's life expectancy was 76.5 years at the time of his sentencing. *See* Kenneth D. Kochanek *et al.*, Ctr. for Disease Control, U.S. Life Tables, 2014, Nat'l Vital Statistics Rep., June 30, 2016, at 8, available at: http://www.cdc.gov/nchs/data/nvsr/nvsr65/nvsr65_04.pdf. Although no one knows with any certainty how long Jenkins will live, we do know that, as a statistical matter, the life expectancy of an incarcerated person drops 2 years for each year of incarceration. *See* Evelyn J. Patterson, *The Dose-Response of Time Served in Prison on Mortality: New York State, 1989-2003*, 103 Am. J. of Pub. Health 523, 526 (2013). Thus Jenkins's life expectancy is likely significantly less than 76.5 years.

7

The Probation Office was further allowed "to conduct periodic, unannounced examinations of any computer equipment you use or possess, limited to all hardware and software related to online use." Notwithstanding the fact that he had never contacted or attempted to contact any minor, he was forbidden from having "any direct contact with a person under the age of 18 unless it is supervised by a person approved of by the probation officer." Further, he was forbidden from having any "indirect contact [sic] with a person under the age of 18 through another person or through a device (including a telephone, computer, radio, or other means) unless it is supervised by a person approved by the probation officer." He was further directed to "reasonably avoid and remove" himself from "situations in which [he has] any other form of contact with a minor." He was directed "not to be in any area in which persons under the age of 18 are likely to congregate, such as school grounds, child care centers, or playgrounds, without the permission of the probation officer."

Jenkins's possibility of any post-release employment during the 25-year period was also severely limited by Judge Suddaby. Jenkins was permitted to work only at locations approved by the Probation Office. If his employment involved the use of a computer, Jenkins was required to notify his prospective employer of the nature of his conviction and the fact that his conviction was facilitated by the use of a computer. Finally, Jenkins was effectively forbidden by the district court from using credit cards during his supervised release. Specifically, he was forbidden from incurring charges to his credit cards or from opening additional lines of credit without prior approval from the Probation Office.

The district court offered only formulaic reasoning for the period of incarceration and the broad-ranging post-release restrictions it imposed. The court's reasoning centered on Jenkins's lack of respect for the law. The district court stated:

8

> You've demonstrated that you have a total lack of respect for the law and disdain for the law. That [is,] in the Court's view it is without question that, if given the opportunity, you will do exactly what you want to do in any situation and you are a very high risk to reoffend.

> You attempted to transport thousands of images and videos of child pornography into Canada and then later failed to appear for your Canadian trial. You attempted to evade justice and when you were arrested in the United States, you blamed Canada . . . You have since demonstrated total disregard for the law and a complete lack of respect for this Court and any of the attorneys who have tried to help you.

App. 860-61. The district court concluded: "[b]ased on these factors and your large collection of child pornography, the Court has imposed a sentence that reflects the seriousness of your crime, that promotes respect for the law, and that provides you with adequate deterrence from committing further crimes, and that protects the public." App. 861. Jenkins timely appealed.

## DISCUSSION

A sentence is substantively unreasonable if it "cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *United States v. Rigas*, 409 F.3d 208, 298 (2d Cir. 2007)). In determining whether a sentence falls within the permissible range, we "patrol the boundaries of reasonableness," cognizant of the fact that responsibility for sentencing is placed largely with the district courts. *Id.* at 191. Our review is limited because the district court is in a different fact finding position, which allows it to interact directly with the defendant, thereby gaining insights that are not always

conveyed by a transcript. *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). Nonetheless, the length of a sentence may, with or without far reaching post-release restrictions, make it excessively punitive or needlessly harsh. *See Rigas*, 583 F.3d at 123. Sentences that fall into these categories are "shockingly high" ones that serve no valid public purpose. *United States v. McGinn*, 787 F.3d 116, 129 (2d Cir. 2015).

Our review of a sentence for substantive reasonableness is governed by the factors set forth in 18 U.S.C. § 3553(a). *United States v. Carr*, 557 F.3d 93, 107 (2d Cir. 2009). One important factor is the need for the sentence to reflect the seriousness of the offense and to promote respect for the law. 18 U.S.C. § 3553(a)(2)(A). Others are to "provide just punishment for the offense;" "afford adequate deterrence to criminal conduct;" and "protect the public from further crimes of the defendant," *id.* § 3553(a)(2), or more succinctly, to fulfill the purposes of "retribution, deterrence, and incapacitation," *United States v. Park*, 758 F.3d 193, 200 (2d Cir. 2014). Additional factors are supplied by the Guidelines under which sentencing courts are required to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §§ 3553(a)(1) and (6).

We are also obligated to consider whether conditions of supervised release imposed by the district court are reasonably related to certain statutory sentencing factors listed in §§ 3553(a)(1) and (a)(2); involve no greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of sentencing; and are consistent with pertinent Sentencing Commission policy statements. *United States v. Dupes*, 513 F.3d 338, 343 (2d Cir. 2008) (citing 18 U.S.C. § 3583(d)). While district courts have broad discretion to tailor conditions of supervised release, *United States v. Gill*, 523 F.3d 107, 108 (2d Cir. 2008), that discretion is not unfettered, *United States v.*

*Doe*, 79 F.3d 1309, 1320 (2d Cir. 1996). It is the responsibility of our court to carefully scrutinize conditions that may be excessively harsh or inexplicably punitive.

We evaluate in turn whether each sentencing factor, "as explained by the district court, can bear the weight assigned it under the totality of circumstances in the case." *Cavera*, 550 F.3d at 191. We conclude that the factors upon which the district court relied—retribution, deterrence, and incapacitation, and the attributes of Jenkins and his crimes—cannot bear the weight of the sentence the district court imposed. Our conclusion that the sentence is excessive is reinforced by the need to avoid unwarranted sentence disparities and by the need to avoid excessively severe conditions of supervised release. On remand, we are confident that Jenkins will eventually receive a sentence that properly punishes the crimes he committed. But Judge Suddaby, in imposing his sentence, went far overboard.

## I.

Consistent with 18 U.S.C. § 3553(a)(4), the district court's starting point was U.S.S.G. § 2G2.2, the guideline governing child pornography offenses. In *United States v. Dorvee*, we held that this Guideline "is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." 616 F.3d 174, 184 (2d Cir. 2010).

First, we observed that the Sentencing Commission has not been able to apply its expertise but instead has increased the severity of penalties "at the direction of Congress," despite "often openly oppos[ing] these Congressionally directed changes." *Id.* at 184–86. Second, we noted that four of the sentencing enhancements[3] were so "run-of-the-mill" and "all but inherent to the crime of conviction" that "[a]n ordinary first-time offender is therefore likely to qualify for

---

[3] That is, enhancements for (i) an image with a prepubescent minor, (ii) an image portraying sadistic or masochistic conduct or other forms of violence, (iii) use of a computer, and (iv) 600 or more images.

a sentence of at least 168 to 210 months" based on an offense level increased from the base level of 22 to 35. *Id.* at 186. We emphasized that this range was likely to be unreasonable because it was "rapidly approaching the statutory maximum" for distribution of child pornography, and because the offense level failed to sufficiently distinguish between "the most dangerous offenders" who "distribute child pornography for pecuniary gain and who fall in higher criminal history categories" and those who distribute for personal, non-commercial reasons. *Id.* at 186–87. Also, we held that this range demonstrated "irrationality in § 2G2.2" because it was substantially more severe than for an adult "who intentionally seeks out and contacts a twelve-year-old on the internet, convinces the child to meet and to cross state lines for the meeting, and then engages in repeated sex with the child." *Id.* at 187.

The concerns we expressed in *Dorvee* apply with even more force here and none of them appears to have been considered by the district court. Jenkins received precisely the same "run-of-the-mill" and "all-but-inherent" enhancements that we criticized in *Dorvee*, resulting in an increase in his offense level from 22 to 35. These enhancements have caused Jenkins to be treated like an offender who seduced and photographed a child and distributed the photographs and worse than one who raped a child. Because he also received an enhancement for his false exculpatory testimony at trial, which we conclude was appropriate, his offense level was 37, producing a Guidelines range of 210 to 262 months.[4] Even without this additional enhancement, the Guidelines range of 168 to 210 months exceeds the statutory maximum of 120 months for Jenkins's possession charge.

Our conclusion that Jenkins's sentence was shockingly high is reinforced by the important advances in our understanding of non-

---

[4] That range extends *beyond* the statutory maximum of 240 months for his count of transportation of child pornography, the more severe of his two offenses; Jenkins's Guideline range is therefore 210 to 240 months. *See Dorvee*, 616 F.3d at 182.

production child pornography offenses since we decided *Dorvee.* To begin with, the latest statistics on the application of sentencing enhancements confirm that the enhancements Jenkins received under this Guideline are all-but-inherent. In 2014, for example, 95.9% of defendants sentenced under § 2G2.2 received the enhancement for an image of a victim under the age of 12, 84.5% for an image of sadistic or masochistic conduct or other forms of violence, 79.3% for an offense involving 600 or more images, and 95.0% for the use of a computer. *See* U.S. Sentencing Comm'n, *Use of Guidelines and Specific Offense Characteristics (Offender Based), Fiscal Year 2014* 42–43, available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2014/Use_of_SOC_Offender_Based.pdf.

Since *Dorvee*, the Sentencing Commission has also produced a comprehensive report to Congress examining § 2G2.2. U.S. Sentencing Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012) [hereinafter "USSC Report"], available at http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf. In this report, the Commission explains that it "believes that the current non-production guideline warrants revision in view of its outdated and disproportionate enhancements related to offenders' collecting behavior as well as its failure to account fully for some offenders' involvement in child pornography communities and sexually dangerous behavior." *Id.* at xxi. Since the Commission has effectively disavowed § 2G2.2, it should be clearer to a district court than when we decided *Dorvee* that this Guideline "can easily generate unreasonable results." 616 F.3d at 188.

Here, § 2G2.2 yielded a sentence that derived substantially from "outdated" enhancements related to Jenkins's collecting behavior. Meanwhile, the government has not alleged that he was involved in the production or distribution of child pornography or

13

that he was involved in any child pornography community. In particular, the government did not claim he used peer-to-peer sharing software, distributed images, or participated in chat rooms devoted to child pornography. Nor does the government allege that he contacted or attempted to contact a child or that he engaged in any "sexually dangerous behavior" separate from his crimes of conviction. Thus, here, as in *Dorvee*, § 2G2.2 cannot "bear the weight assigned it" because the cumulation of repetitive, all-but-inherent, enhancements yielded, and the district court applied, a Guideline range that failed to distinguish between Jenkins's conduct and other offenders whose conduct was far worse. *Cavera*, 550 F.3d at 191. It was substantively unreasonable for the district court to have applied the § 2G2.2 enhancements in a way that placed Jenkins at the top of the range with the very worst offenders where he did not belong.

## II.

The district court justified its sentence with reference to the size of Jenkins's collection of child pornography, his refusal to accept responsibility, his attempts to blame others, his disrespect for the law, and his likelihood of reoffending. Paraphrasing the language of 18 U.S.C. § 3553(a)(2), the court concluded that a sentence of 225 months would reflect the seriousness of Jenkins's offenses, promote respect for the law, provide adequate deterrence, and protect the public. The purposes of retribution, deterrence, and incapacitation are important, and we in no way condone either his consumption of child pornography or his misconduct before various authorities including the district court.

However, every Guidelines sentence is limited by § 3553(a)'s "parsimony clause," which instructs a district court to impose a sentence "sufficient, but not greater than necessary," to achieve § 3553(a)(2)'s goals. *Dorvee*, 616 F.3d at 182. District courts are required to carefully consider on an individualized basis "the nature and circumstances of the offense and the history and characteristics

14

of the defendant." 18 U.S.C. § 3553(a)(1). Further, those considerations must be applied in the context of the other § 3553(a) factors. After the other factors are considered, upward adjustments may be appropriate for the sake of retribution, deterrence, and incapacitation. However, we conclude that the district court's considerations cannot reasonably justify regarding Jenkins as the worst of the worst and sentencing him as such.

While he should receive stern punishment for his crimes, the fact remains that the sentence he received fails, as required by § 3553(a)(1), to account for the important differences between the sentence Jenkins and those who produced or distributed child pornography or who physically abused children received. For example, in upholding a sixty-year sentence in *United States v. Brown*, we found it significant that the defendant had repeated sexual contact with multiple young victims and engaged in the production of child pornography during the course of that abuse. 843 F. 3d 74, 83 (2d Cir. 2016). Likewise, in *Broxmeyer*, we affirmed a thirty-year sentence for child pornography where the defendant was convicted of attempted production of child pornography and committed statutory rape of girls he was supposedly mentoring. 699 F.3d at 297. Whether a child pornography offender has had or has attempted to have contact with children is an important distinction. "The failure to distinguish between contact and possession-only offenders [is] questionable on its face," and this failure "may go against the grain of a growing body of empirical literature indicating that there are significant, § 3553(a)-relevant differences between these two groups." *United States v. Apodaca*, 641 F.3d 1077, 1083 (9th Cir. 2011); *see e.g.*, Shelley L. Clevenger et al., "A Matter of Low Self-Control? Exploring Differences Between Child Pornography Possessors and Child Pornography Producers/Distributers Using Self-Control Theory," 28 Sexual Abuse 555 (2016) (finding online offenders have greater victim empathy and greater levels of self-control than offline offenders).

15

Further, among defendants convicted of transportation, Jenkins is relatively less culpable because he was bringing his collection for his own personal use, rather than carrying child pornography to sell or distribute to others. In 2010, 88.7% of those convicted of transportation "engaged in knowing distribution to another." USSC Report 189 n.72. Along this dimension, then, Jenkins is near the bottom of the distribution of offenders. However, the district court imposed a sentence of 225 months, near the top of the statutory range of 60 to 240 months. 18 U.S.C. § 2252A(b)(1). Admittedly, Jenkins may be unlike many other transporters because he refused to accept responsibility, offered false exculpatory testimony at his trial, and was disrespectful to the district judge. However, these factors cannot justify a sentence that is *165* months above the statutory minimum and a mere *15* months below the statutory maximum.

Moreover, bringing a personal collection of child pornography across state or national borders is the most narrow and technical way to trigger the transportation provision. Whereas Jenkins's transportation offense carried a statutory maximum of 20 years, the statutory maximum for his possession offense was "only" 10 years. Jenkins was eligible for an additional 10 years' imprisonment because he was caught with his collection at the Canadian border rather than in his home. The government argues that Jenkins was "so captivated by child pornography that he could not leave behind his collection even for a short vacation to Canada," Appellee Br. 84. We disagree that bringing a personal collection to the start of a vacation as opposed to leaving it at home supplies an appropriate basis for sentencing a person to an additional 10 years in prison.

In addition, though we accept the district court's observation that Jenkins's conduct at trial and during sentencing proceedings reflected a "disdain for the law," we find problematic the district court's exclusive reliance on this factor as justification for dramatically increasing Jenkins's sentence. *See* App. 860-61. While we

do not condone Jenkins's lack of respect for the law, it simply cannot bear the weight the district court assigned to it. *Dorvee*, 616 F.3d at 183; *cf. United States v. Gerezano Rosales*, 692 F.3d 393, 401 (5th Cir. 2012) (holding district court's decision to increase a defendant's sentence from 71 to 108 months based on defendant's disrespect for the law constituted clear error in judgement in balancing the sentencing factors). Jenkins had already paid heavily for his disrespectful behavior. The Court denied him any offense level reduction for acceptance of responsibility. Apparently concluding that this significant sanction was insufficient, the district judge proceeded to add years and years onto Jenkins's sentence in light of his failure to accept responsibility, as demonstrated by his persistent rudeness and disrespect. While we appreciate the district judge's frustration, we are unwilling to sanction dramatically increasing a sentence because an angry out-of-control pro se defendant facing decades in prison fails to manifest sufficient respect for the system that is about to incarcerate him.

We also disagree with the district court's conclusion that Jenkins's lack of respect makes him "a very high risk to reoffend." App. 861. The district court's conclusion ignores widely available, definitive research demonstrating that recidivism substantially decreases with age. *See e.g.*, U.S. Sentencing Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 8, available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications /research-publications/2004/200405_Recidivism_Criminal_History.pd f. That research documents that offenders with a Criminal History Category I between ages 41 to 50 have a 6.9% recidivism rate, as opposed to a 29.5% recidivism rate for Category I offenders under 21.These statistics from the Commission, which include offenders who accepted responsibility as well as those who did not, suggest that Jenkins, an offender with no criminal history points who will be 63 when he is released from his lengthy prison sentence, will be a

low–not a high–risk to reoffend since more than 90% of individuals in his age group do not reoffend. Although it would be well within a district court's discretion to increase a sentence based on a likelihood of reoffending, there must, in a case like this, be some support in the record for that conclusion, such as, for example, a record of previous convictions or previous attempts to harm children. Here there is none. A sentence of 225 months for a first-time offender who never spoke to, much less approached or touched, a child or transmitted explicit images to anybody is unreasonable.

Additional months in prison are not simply numbers. Those months have exceptionally severe consequences for the incarcerated individual. They also have consequences both for society which bears the direct and indirect costs of incarceration and for the administration of justice which must be at its best when, as here, the stakes are at their highest.[5]

Finally, the government highlights the seriousness of Jenkins's offenses as a consumer of child pornography, saying that he "encouraged the market for this content and spurred the abuse of other children whose exploitation would be necessary to create new images and videos, to feed the demand of consumers like Jenkins." Appellee Br. 84. But this observation is true of virtually every child pornography offender. It is undoubtedly correct that "[a]ll child pornography offenses are extremely serious because they both perpetuate harm to victims and normalize and validate the sexual exploitation of children." USSC Report 311. We do not for a moment dispute that Jenkins deserves a substantial term of imprisonment. Nonetheless, some types of conduct in this area are more culpable than others. District courts should generally reserve sentences at or near the statutory maximum for the worst offenders. Treating Jenkins

---

[5] The annual cost of incarcerating a 60-year-old state prisoner is $60,000 to $70,000, as compared to $27,000 for younger inmates. U.S. Department of Justice, National Institute of Corrections, *Correctional Healthcare: Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates* 11, available at http://static.nicic.gov/Library/018735.pdf.

as the worst of the worst has no grounding in the record we are reviewing and is inconsistent with the parsimony clause.

### III.

The sentence the district court imposed also created the type of unwarranted sentence disparity that violates § 3553(a)(6).[6] Statistics from the Sentencing Commission validate our concern. In general, a district court need not consult the Commission's statistics because there is "no assurance of comparability." *United States v. Irving,* 554 F.3d 64, 76 (2d Cir. 2009). Here, however, the Commission's statistics, which were readily available to the district court at the time of sentencing, allow for a meaningful comparison of Jenkins's behavior to that of other child pornography offenders.

First, just as § 2G2.2 produces Guidelines ranges that are higher than those for individuals who engage in sexual conduct with a minor, Jenkins's sentence is longer than typical federal sentences for sexual offenses against in-person victims. In 2013, the latest year available to the district court at the time of sentencing, the mean sentence in the category of "sexual abuse" was 137 months, and the median was 120 months. U.S. Sentencing Comm'n, *2013 Sourcebook of Federal Sentencing Statistics* tbl.13, available at http://www.ussc .gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2013/Table13.pdf. We believe Jenkins's sentence

---

[6] In the ordinary case, a court implicitly gives sufficient weight to the need to prevent unwarranted sentence disparities when it has "correctly calculated and carefully reviewed the Guidelines range." *See* 18 U.S.C. § 3553(a)(6); *Gall v. United States*, 552 U.S. 38, 54 (2007). However, we have held that § 2G2.2 tends to produce unreasonable results. *See Dorvee,* 616 F.3d at 184. Recognizing this difficulty, district courts have routinely imposed lower sentences for child pornography offenses, and the government even occasionally moves for a lower sentence. In 2010, 44.3% of cases of non-production child pornography offenses in 2010 involved courts' imposition of a below-Guidelines sentence, and another 10.3% involved a government motion for such a sentence. USSC Report 221, 223.

that is 88 months above this mean and 105 months above this median is unreasonable.

Second, the mean federal sentence in the "child pornography" category in 2013 was 136 months, and the median was 120 months. *Id.* This category included several hundred individuals who *produced* child pornography (333, compared to 1,609 sentenced for trafficking and possession offenses). U.S. Sentencing Comm'n, *Use of Guidelines and Specific Offense Characteristics (Offender Based), Fiscal Year 2013* 39-40, available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2013/Use_of_Guidelines_and_Specific_Offense_Characteristics_Offender_Based_Revised.pdf. The presence of such individuals in the distribution is a further indication that a sentence that is 89 months above the 2013 mean for child pornography sentences and 105 months above the median is not reasonable.

Third, the Sentencing Commission's 2012 report analyzed sentences of offenders convicted of possession without a distribution enhancement, but with the run-of-the-mill enhancements previously described. *See supra* at 11-12. Among these offenders, the mean sentence was 52 months and the highest sentence was 97 months. USSC Report 215 fig.8.3. Admittedly, these offenders, unlike Jenkins, accepted responsibility and did not all engage in misconduct during their criminal proceedings. Nonetheless, we see no reasonable justification on the record as to why he should receive *128* months above the longest sentence in this category and *173* months above the mean among possessors with the four all-but-inherent enhancements.

## IV.

In addition, the conditions of supervised release imposed on Jenkins, including broad restrictions on his movements, his ability to obtain gainful employment, and use of credit cards for 25 years upon his release from prison, are not "reasonably related," to "the nature

and circumstances of the offense" or Jenkins's "history and characteristics;" nor are they "reasonably necessary" to the sentencing purposes set forth in § 3553(a)(2). *See* 18 U.S.C. §§ 3553 and 3563(b). We would reach this same conclusion about the duration and terms of Jenkins's supervised release even if the period of incarceration he had received had been lower.

To start, the duration of the supervised release, on top of nearly 19 years in prison, make the restrictions excessive and unreasonable. Jenkins will be 63 years old when he is released from prison. He will be under supervised release for the next 25 years until he is 88 years old. While this term of supervised release does not violate the Guidelines or the Policy Statement of § 5D1.2(b)(2), we may not presume the reasonableness of the sentence on that basis. *United States v. Hayes*, 445 F.3d 536, 537 (2d Cir. 2006). This is particularly true where the district court offered no explanation that might justify imposing what amounts to a lifetime of the most intense post-release supervision that prevents Jenkins from ever re-engaging in any community in which he might find himself. By contrast, in *United States v. Bowles*, 260 F. App'x 367, 369-70 (2d Cir. 2008) (summary order), we held that Bowles's problems with sexual deviance, his perception that the children enjoyed the contact, and his long-term alcohol and drug abuse and mental illness formed a reasonable basis for lifetime supervised release. No congruent concerns are presented in the record we are reviewing. Ordinarily, a district court is under no obligation to provide elaborate reasons for the sentence it imposes. In many instances the reasons for a sentence can be garnered from the record. That is not the case here. Where a sentence is unusually harsh, meaningful appellate review is frustrated where it is not possible to understand why the sentence was imposed.

Moreover, we are troubled by specific conditions of release. For example, one of them prohibits Jenkins from having direct contact with anyone under the age of 18 unless supervised by a person

approved by the probation office. As mentioned above, Jenkins never contacted or attempted to contact any minors. But under this condition, Jenkins is prohibited during the 25-year period from interaction with family members or friends who might have children under the age of 18 unless he goes through a preapproval process with the Probation Office which presumably would entail some sort of investigation and finding by that office. This restriction would apply with full force to all routine family interaction–for example, Thanksgiving dinners or seders or christenings.

Another condition bars Jenkins from any "indirect contact" with a person under the age of 18 "through another person or through a device (including a telephone, computer, radio, or other means)" unless it is supervised by a person approved by the Probation Office. It is difficult to know what the boundaries of this restriction might be. If, for example, members of a little league baseball team were soliciting in front of a supermarket, could Jenkins approach them or later call in and contribute? Common sense would say "yes" but the problem for Jenkins would be that the consequences of an incorrect guess would be sufficiently serious that he would be ill advised to run any risks at all. That same restriction required him to "reasonably avoid and remove himself . . . from situations in which [he] has any other form of contact with a minor." Again it is unclear what Jenkins is expected to do for the 25 years during which he must comply with this restriction. Is he required to stay away from sporting events or natural history museums or street fairs? The reasonable necessity for these restrictions which apply to Jenkins when he is in his 70s and 80s eludes us.

Likewise the relationship between the restrictions on Jenkins's employment and Jenkins's offense and circumstances is not readily apparent. *See United States v. Brown*, 402 F.3d 133, 138–39 (2d Cir. 2005) (vacating condition where it was "seemingly unrelated to [Defendant's] offense and circumstances"). As mentioned earlier, the

nature of these employment restrictions mean that, as a practical matter, he may never be employable.

Another condition prohibits Jenkins from incurring new credit charges or opening additional lines of credit without approval of a probation officer. Nothing in the record suggests these restrictions on Jenkins's use of credit cards are "reasonably necessary," 18 U.S.C. § 3563(b)(5), to protect the public or to deter Jenkins from continuing to engage in the conduct for which he was convicted–possession of child pornography. *Cf. United States v. Peppe,* 80 F.3d 19, 23 (1st Cir. 1996) (holding that a bar on incurring debt without prior approval was reasonably related to defendant's offense, which involved the extortionate extension of credit). This is especially true when the use of credit cards or other forms of credit will likely be necessary to function in the society that will exist after Jenkins's eventual release from prison. *See United States v. Peterson,* 248 F.3d 79, 83 (2d Cir. 2001) (*per curiam*) (vacating a special condition imposing restrictions on computer ownership because, in part, "[c]omputers and Internet access have become virtually indispensable in the modern world of communications and information gathering"). Why Jenkins should be prohibited from buying a drink on an airplane or taking an Uber ride or making a purchase on Amazon unless the transaction is pre-approved by a probation officer cannot be divined from the record we are reviewing.

The conditions of supervised release imposed by Judge Suddaby mean that Jenkins will never be able to pay his debt to society. He will likely never be able to develop and maintain meaningful relationships with others, to obtain employment and remain employed or to ever lead anything that remotely resembles a "normal" life.

As we review these conditions of release, what is particularly depressing is that the Assistant United States Attorney and the probation officer who appeared at sentencing either believed they were appropriate or  did not believe they were appropriate but

nonetheless stood mute as they were imposed. We do not doubt for a moment that there are other cases in which some or all of the conditions imposed by the district court would be required and reasonable. But given Jenkins's personal characteristics and the nature of his offense, this constellation of restrictions, compounded by their 25-year duration, "inflicts a greater deprivation" on his liberty than is "reasonably necessary." *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002).

## CONCLUSION

Jenkins's sentence is substantively unreasonable. Accordingly, we vacate it and remand for resentencing. This panel will retain jurisdiction over any subsequent appeal. Either party may notify the Clerk of a renewed appeal within fourteen days of the district court's new sentence. *United States v. Tutty*, 612 F.3d 128, 133 (2d Cir. 2010) (citing *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994).[7]

---

[7] On the remand of this case, the conditions of supervised release should be sufficiently explained by the district court to permit meaningful appellate review.

14-4295
United States v. Jenkins

KEARSE, Circuit Judge, dissenting in part:

I respectfully dissent from so much of the majority's opinion as rules that the imprisonment component of the sentence imposed on defendant Joseph Jenkins, within the applicable Guidelines range, is substantively unreasonable.

As is revealed in the summary order filed contemporaneously in this case, the district court in sentencing Jenkins did not commit any procedural error. Where we have determined "'that the district court's sentencing decision is procedurally sound,'" United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)), we reverse on the basis of substantive unreasonableness only if the sentence "cannot be located within the range of permissible decisions," Cavera, 550 F.3d at 189 (internal quotation marks omitted).

In sentencing Jenkins to imprisonment for 225 months-- within the Guidelines range (which was either 210-262 months if the district court chose to impose the sentences consecutively or 210-240 months if it did not (240 months being the statutory maximum on one count))--the district court stated that it was imposing "a sentence that reflects the seriousness of your crime, that promotes respect for the law, and that provides you with adequate deterrence from committing further crimes, and that protects the public." (Sentencing Transcript ("S.Tr.") 30.) In stating that it found "this sentence [to be] sufficient but not greater than necessary to comply with the purposes of sentencing" (S.Tr. 29), the court was heavily influenced by its view that, without a lengthy prison term, Jenkins would be likely to repeat his offenses. It said, inter alia:

> I couldn't disagree with your attorney more when she says that you're not a
> threat to commit this crime again. You've demonstrated that you have a total
> lack of respect for the law and disdain for the law. That[ is,] in the Court's

view it is without question that, if given the opportunity, you will do exactly what you want to do in any situation and you are a very high risk to reoffend.

(S.Tr. 29-30 (emphasis added).) This view is supported by, inter alia, Jenkins' evasion of the charges against him in Canada and his repeated insistence throughout this prosecution that he had done nothing wrong and could not validly be prosecuted. For example, in his supplemental sentencing memorandum submitted pro se, he asserted, inter alia,

■ that "[t]here is no justification or cause legally for the proceeding";

■ that the United States had "no jurisdiction" to try him;

■ that the jury's verdict of guilt "was obtained through conspired fraud, misrepresentation," and "perjury"; and

■ that "the[] whole case" was "unsubstantiated garbage."

(Jenkins' pro se sentencing memorandum at 1-3.)

The district court noted that after Jenkins "attempted to transport thousands of images and videos of child pornography into Canada and then later failed to appear for [his] Canadian trial" and was arrested in the United States, he somehow "blamed Canada." (S.Tr. 30.) In fact, the court noted that Jenkins "has blamed everybody and everyone for his criminal activity." (Id. at 29.) Indeed, Jenkins even blamed the children depicted in the pornographic images and videos he transported, stating that "[m]ost" of those images "are 'webcam' videos, they (victims) intentionally produced and broadcast (themselves) over the internet and should be prosecuted (themselves)." (Jenkins' pro se sentencing memorandum at 2 (emphases added).)

Given this record in which Jenkins, inter alia, disputed any justification or authority for prosecuting him, and argued that instead the children who were victims of the child pornography should have been prosecuted, the district court's concern for the likelihood that, without a lengthy

2

prison term, Jenkins would re-offend was not unreasonable, and I cannot conclude that the imposition of the prison term that was no higher than midway between the top and bottom of the Guidelines range "cannot be located within the range of permissible decisions."