24-1336-cr
United States v. Ramos-Acevedo

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of July, two thousand twenty-five.

PRESENT:
> JOSÉ A. CABRANES,
> GERARD E. LYNCH,
> STEVEN J. MENASHI,
> *Circuit Judges.*

_____

United States of America,

> *Appellee,*

> v.                                                                          24-1336-cr

Ramon Ramos-Acevedo,

> *Defendant-Appellant,*

**Victor Rodriguez-Gomez, a.k.a. Calami, a.k.a. C., Martin M. Cooper,**

        *Defendants.*

_____

FOR APPELLEE:

GEOFFREY M. STONE, Assistant United States Attorney (Conor M. Reardon, Assistant United States Attorney, *on the brief*) for Vanessa Roberts Avery, United States Attorney for the District of Connecticut, New Haven, CT.

FOR DEFENDANT-APPELLANT:

DANIEL S. NOOTER, Esq., Washington, D.C.

Appeal from a judgment of the United States District Court for the District of Connecticut (Michael P. Shea, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Ramon Ramos-Acevedo appeals from a judgment entered on May 14, 2024, following his guilty plea to conspiracy to distribute 400 grams or more of fentanyl and five kilograms or more of cocaine. The district

court sentenced Ramos-Acevedo principally to 135 months' imprisonment to be followed by five years' supervised release. On appeal, Ramos-Acevedo argues that the district court committed plain error by (1) erroneously assuming that a sentence within the range recommended by the Sentencing Guidelines would necessarily avoid unwarranted sentencing disparities, ignoring statistical evidence to the contrary, and (2) requiring him to participate in cognitive behavioral therapy as a condition of supervised release without providing a sufficient justification for that requirement on the record. Due to these errors, he argues, his sentence was procedurally unreasonable. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I. Standard of Review

"We review sentencing decisions for procedural and substantive reasonableness," *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019), ordinarily applying a 'deferential abuse-of-discretion standard,'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc), quoting *Gall v. United States*, 552 U.S. 38, 41 (2007). However, where, as here, the defendant fails to raise his challenges to his

3

sentence before the district court and instead raises them for the first time on appeal, we review those challenges under the even more deferential plain error standard. *See United States v. Davis*, 82 F.4th 190, 196 (2d Cir. 2023). Under that standard, a defendant must show that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [his] substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Osuba*, 67 F.4th 56, 65 (2d Cir. 2023), quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).

## II.    The district court did not plainly err by imposing a 135-month sentence.

Ramos-Acevedo maintains that the district court "erroneous[ly] assum[ed] that a Guidelines sentence [would] inherently avoid[] nationwide sentencing disparities" and ignored data provided in his Pre-Sentence Report[1]

---

[1] That data came from the U.S. Sentencing Commission's Judicial Sentencing Information database, which "provides cumulative data based on five years of sentencing data for offenders sentenced under the same primary guideline, and with the same Final Offense Level and Criminal History Category." U.S. Sentencing

4

("PSR") that showed that 135 months – the low end of his Guidelines range[2] and the sentence he received – was 15 months longer than the average sentence and three months longer than the median sentence received by arguably comparable defendants. Appellant's Br. 16-17. As a result, he argues, the district court failed to properly consider the need for sentencing courts "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* at 18, quoting 18 U.S.C. § 3553(a)(6). Because a district court commits procedural error when it fails to properly consider the § 3553(a) factors, Ramos-Acevedo argues that the district court's misapprehension and oversight concerning the typical sentence imposed on similarly situated defendants amount to plain error.

Contrary to Ramos-Acevedo's arguments, the record does not reflect that the district court misunderstood the relationship between the Guidelines and the need to avoid unwarranted sentencing disparities under § 3553(a)(6). We have

---

Commission, *Judiciary Sentencing Information*, https://www.ussc.gov/guidelines/judiciary-sentencing-information (last visited Jun. 27, 2025).

[2] Ramos-Acevedo does not contest the calculation of his Guidelines range.

5

suggested that consideration of that sentencing factor "require[s] something different than mere consideration of the Guidelines," which separately must be considered in accordance with 18 U.S.C. § 3553(a)(4). *United States v. Wills*, 476 F.3d 103, 110 (2d Cir. 2007), *abrogated on other grounds by Cavera*, 550 F.3d 180. However, that mandate is "modest," because "it cannot be that a judge must act as social scientist and assess nationwide trends in sentencing with each new defendant [–] in effect, intuiting Guidelines revisions on an interim basis as a proxy for the Sentencing Commission." *Id.* Thus, we have observed that "[i]n the ordinary case, a court implicitly gives sufficient weight to the need to prevent unwarranted sentence disparities when it has 'correctly calculated and carefully reviewed the Guidelines range.'" *United States v. Jenkins*, 854 F.3d 181, 193 n.6 (2d Cir. 2017), quoting *Gall*, 552 U.S. at 54; *see also United States v. Moses*, 109 F.4th 107, 119 (2d Cir. 2024) ("By carefully calculating and reviewing [the defendant's] Guidelines range, the district court 'necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.'"), quoting *Gall*, 552 U.S. at 54. We have also noted that "a reviewing court's concern about unwarranted disparities is at a minimum when a sentence is within the

6

Guidelines range." *United States v. Irving*, 554 F.3d 64, 76 (2d Cir. 2009) (internal quotation marks omitted).

Only where a Guidelines sentence is nonetheless significantly out of step with national sentencing data, with no justification for the increase apparent in the record, have we deemed that sentence procedurally unreasonable. *Jenkins*, 854 F.3d at 193-94. For example, in *Jenkins*, we held that a sentence "*128* months above the longest sentence in [the defendant's] category and *173* months above the mean," without any apparent explanation for the difference, ultimately "created the type of unwarranted sentence disparity that violates § 3553(a)(6)." *Id.* (emphasis in original). We held the same in *United States v. Stewart*, where evidence suggested the sentence imposed "exceed[ed] the national average for similarly situated offenders by five years or more" and no explanation for that disparity was apparent in the record. No. 23 Cr. 6330, 2024 WL 3517853, at *3 (2d Cir. July 24, 2024) (summary order).

That is not the case here. *First*, here, unlike in *Jenkins* or *Stewart*, the difference between the 135-month low-end Guidelines recommendation that the district court adopted and the average and median sentences imposed on

7

arguably comparable defendants was far shorter than ten or even five years: it was only 15 months above the average sentence identified in the data and just three months above the median. As a result, Ramos-Acevedo's sentence is not so out of step with national sentencing trends as to raise significant concerns about unwarranted disparity under 18 U.S.C. § 3553(a)(6).[3]

*Second*, evidence in the record suggests that the district court (1) was aware of that sentencing data and (2) believed any disparity between Ramos-Acevedo's sentence and the sentencing data in his PSR was warranted. Although the district court did not discuss that data explicitly at the sentencing, "the failure of the sentencing judge to address [an] argument explicitly on the record does *not*,

---

[3] In making this observation, we in no way suggest that 15 or even three months in prison is negligible. "Additional months in prison . . . have exceptionally severe consequences for the incarcerated individual." *Jenkins*, 854 F.3d at 192. We merely note that the smaller the disparity between the sentence imposed and the average or median sentence received by similarly situated defendants, the less likely the district court is to have plainly erred in its consideration of the potential for unwarranted disparities under § 3553(a)(6). *See, e.g.*, *United States v. Murphy*, No. 24-404, 2025 WL 428420, at *3 (2d Cir. Feb. 7, 2025) (summary order) (stating – albeit in the context of substantive reasonableness rather than § 3553(a)(6) – that "[e]ven if we were to recognize a statistical disparity" between the defendant's sentence and the average for defendants with similar offense levels and criminal-history categories, "the district court's nine-month variance from the applicable Guidelines range [was] not so high as to overcome 'the deference we owe to district judges'"), quoting *Cavera*, 550 F.3d at 197.

8

without more, demonstrate a failure of consideration by the judge." *United States v. Fernandez*, 443 F.3d 19, 29 (2d Cir. 2006) (emphasis in original), *abrogated on other grounds by Rita v. United States*, 551 U.S. 338 (2007). Instead, absent clear evidence to the contrary, we presume "that the sentencing judge has considered all arguments properly presented to [him]." *Id.* "This presumption is especially forceful when, as was the case here, the sentencing judge makes abundantly clear that []he has read the relevant submissions." *Id.*

In this case, the district court explicitly noted that it had reviewed the PSR, which included the relevant data, and it was highly conversant with the PSR's other contents, even quoting from the PSR during the sentencing. Given that context, we see no reason to believe that the district court simply ignored the sentencing data presented to it in the same document. *See id*.

Instead, the district court appears to have imposed a Guidelines sentence *after accounting for that data*. Unlike the records in *Jenkins* or *Stewart*, the record here provides a ready explanation for Ramos-Acevedo's higher-than-average sentence: his conduct "involve[d] fentanyl" and cocaine, App'x 98, while the statistics found in the PSR reflect all defendants who committed an offense with

9

powder cocaine as the primary drug, regardless of whether the offense involved other illegal drugs. At sentencing, the district court stressed that fentanyl "is more dangerous than heroin itself" and that "[w]e're still seeing 1200, 1300 [overdose] deaths a year, just in the state of Connecticut, 85 percent of which owe directly to fentanyl." *Id.* at 98, 99. That the district court chose to highlight the dangerousness of fentanyl – and not to do the same for cocaine – demonstrates that it considered fentanyl distribution to be a substantially more serious infraction. Its comments thus raise a clear inference that Ramos-Acevedo's conduct warranted a sentence higher than those reflected in the data.

Other facts in the record also support a longer-than-average sentence for Ramos-Acevedo. For example, (1) the conspiracy involved bringing fentanyl into Connecticut from across state lines; (2) the drug quantities used to calculate the Guidelines range were based only on the narcotics that had been seized, even though evidence suggests that significantly higher quantities were involved the scheme; (3) he had previously been convicted of a federal drug trafficking offense punished by a 120-month prison sentence, and (4) he had been convicted of selling marijuana less than six months after his first term of federal supervised

10

release expired. Any – or all – of those facts might have justified a higher-than-average sentence here.

Moreover, Ramos-Acevedo's argument misconceives the meaning of the statistical data on which he relies. That the *median* sentence for defendants convicted of distributing powder cocaine was 132 months suggests that fully half of all sentences for defendants in that category exceeded that number. Similarly, that the *average* sentence for such offenders was 120 months implies that an unspecified number of them received sentences above that level, potentially even substantially higher, while some number of such offenders received sentences lower than that level. And as we have explained, "[a]verages of sentences that provide no details underlying the sentences are [also] unreliable to determine unwarranted disparity because they do not reflect the enhancements or adjustments for the aggravating or mitigating factors that distinguish individual cases." *Irving*, 554 F.3d at 76 (internal quotation marks and alteration omitted); *see also United States v. Murphy*, No. 24-404, 2025 WL 428420, at *3 (2d Cir. Feb. 7, 2025) (summary order) (same).

11

Given those circumstances, the district court did not err, much less plainly err, by imposing a Guidelines sentence of 135 months' imprisonment in this case. While that sentence "may be longer than average" for drug offenders with the same Guidelines range who also distributed primarily powder cocaine, "it was at the bottom end of his Guidelines range and imposed based on individualized consideration of the sentencing criteria." *United States v. Hardee*, No. 23 Cr. 6398, 2025 WL 323339, at *2 (2d Cir. Jan. 29, 2025) (summary order); *see also* App'x 95 (noting the need to consider "[Ramos-Acevedo's] background and characteristics, the nature and circumstances of []his crime, [and] the purposes of a criminal sentence" under § 3553(a)); *id.* at 96-102 (carefully evaluating each factor). It was "therefore well within the range of permissible decisions available to the district court." *Hardee*, 2025 WL 323339, at *2.

III. **The district court did not plainly err by imposing cognitive behavioral therapy as a condition of supervised release.**

Ramos-Acevedo also appeals a special condition of supervised release that requires him to participate in a cognitive behavioral therapy program selected by Probation and approved by the district court. Specifically, he argues that this special condition of supervised release was inadequately explained and

12

insufficiently supported by the record. He did not object to the special condition at sentencing, so we review this challenge for plain error as well. *United States v. Green*, 618 F.3d 120, 122 (2d Cir. 2010).

"Courts are given broad latitude to design their own 'special conditions [of supervised release],' so long as the courts, among other things, consider the goals of sentencing, including the need for the sentence to provide adequate deterrence, protect the public, and provide the defendant with needed services." *United States v. Sims*, 92 F.4th 115, 120 (2d Cir. 2024). "A district court is required to make an individualized assessment when determining whether to impose a special condition of supervised release, and to state on the record the reason for imposing it." *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018). A district court plainly errs when it imposes a condition without sufficient explanation and "it is not obvious from the record why such a condition was reasonably necessary." *United States v. Bleau*, 930 F.3d 35, 43 (2d Cir. 2019). But we may uphold a special condition where "the district court's reasoning is self-evident in the record." *Betts*, 886 F.3d at 202 (internal quotation marks omitted).

We have recently upheld a similar cognitive behavioral therapy condition by summary order in *United States v. Hardee*. 2025 WL 323339, at *3. In that case,

> [the defendant's] sentencing submission before the district court as well as his Presentence Report . . . detailed a history of repeatedly making poor choices, including prior convictions for assault and robbery, and described [his] self-professed desire to become a productive member of his family and community and willingness to obtain an understanding of how violent behavior is learned and to stop his violating.

*Id.* (internal alteration adopted and internal quotation marks omitted). Based on this information, the district court could have reasonably concluded that the defendant "was a person of very poor judgment who needed to improve self-regulation." *Id.* (internal quotation marks omitted). Probation had recommended cognitive behavioral therapy specifically to address that concern, suggesting that it would "assist the defendant in recognizing his poor decisions and making better choices." *Id.* The district court accepted that recommendation. *Id.*

Reviewing the district court's decision, we noted that "cognitive behavioral therapy is designed in part to remedy psychological problems resulting from 'faulty or unhelpful ways of thinking' and 'learned patterns of unhelpful behavior.'" *Id.*, quoting *Clinical Practice Guidelines: What Is Cognitive*

14

*Behavioral Therapy?*, American Psychological Association, https://www.apa.org/ptsd-guideline/patients-and-families/cognitive-behavioral.pdf [https://perma.cc/G3UP-BY9F]. Given that observation, the defendant's history, and the district court's comments, we held that it was "self-evident in the record that the challenged special condition w[ould] reasonably advance the purposes of sentencing by assisting in [the defendant's] rehabilitation and reducing the likelihood of his recidivism," *Id.* (internal quotation marks omitted).

In contrast, we have *rejected* a cognitive behavioral therapy condition where "[t]he record d[id] not indicate that [the defendant] ha[d] a history of therapy or diagnosed mental health concerns which would necessitate therapy . . . [and] such mental health treatment was not suggested by probation, the government, or the defense." *United States v. Jimenez*, No. 22 Cr. 1022, 2024 WL 1152535, at *2 (2d Cir. Mar. 18, 2024) (summary order).

Ramos-Acevedo urges us to follow the decision in *Jimenez*, but his circumstances are far closer to those in *Hardee*. In his case, Probation specifically recommended cognitive behavioral therapy – as opposed to "general mental

15

health treatment" – "reflect[ing] the goal of the recommended condition to help Mr. Ramos-Acevedo make better decisions in the future." PSR Addendum 1. And when adopting that recommendation, the district court explained that the condition was "based on [his] continued criminal activity into [his] mid-forties," App'x 103, which demonstrated that, unlike most individuals, Ramos-Acevedo was not "aging out" of his misconduct, *id.* at 97. Because of that concerning fact, the court noted, it would be important for Ramos-Acevedo to "work on [his] thinking styles" through cognitive behavioral therapy following his imprisonment. App'x 103. Given that explanation, here, as in *Hardee*, it is "self-evident in the record" that the challenged special condition was imposed in order to "advance the purposes of sentencing by assisting in [Ramos-Acevedo's] rehabilitation and reducing the likelihood of his recidivism." 2025 WL 323339, at *3. Thus, the district court did not plainly err in imposing that condition in this case.[4]

---

[4] Ramos-Acevedo also argues that the cognitive behavioral therapy condition is impermissibly vague, relying on the statement in *Jimenez* that "the undefined nature of the kind of program required by this condition . . . raises questions about the meaning of the condition." 2024 WL 1152535, at *2. We disagree. "A condition is too vague if it requires a reasonable person to speculate as to its meaning." *Sims*, 92 F.4th at 125,

*   *   *

We have considered Ramos-Acevedo's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

quoting *United States v. Carlineo*, 998 F.3d 533, 536 (2d Cir. 2021). That is not the case here. The condition specifies the type of therapy required and provides that the district court must approve any program that Probation recommends. Ramos-Acevedo thus has sufficient notice of what is required. *See Hardee*, 2025 WL 323339, at \*3 ("That Special Condition Two specifies a particular treatment approach here—one also recommended by the Probation Office in the PSR—does not make it vague."). Nor is the condition an impermissible delegation of the district court's authority. Indeed, we have said – in the context of a cognitive behavioral therapy condition specifically – that "[l]eaving the specific details of a mental health treatment program to the Probation Office is 'an unambiguously lawful, and indeed advisable, means of delegating supervisory authority to the Probation Office.'" *Hardee*, 2025 WL 323339, at \*4, quoting *United States v. Young*, 910 F.3d 665, 671 (2d Cir. 2018); *see also United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015) (stating that a district court may delegate to Probation the authority to select "a therapy provider or treatment schedule"). Thus, Ramos-Acevedo's vagueness and delegation concerns are unavailing as well.